UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEPHANIE BATES,<br><br>*Plaintiff,*<br><br>v.<br><br>CALIBER HOLDINGS LLC,<br><br>*Defendant.* | 3:25-cv-01831-E-BN<br>Civil Action No |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Plaintiff, **Stephanie Bates,** and files this Second Amended Complaint against Defendant, **Caliber Holdings LLC,** and respectfully shows the Court as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under federal laws including Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), Equal Pay Act (EPA), Retaliation under the Texas Labor Code § 21.055, and Harassment and Hostile Work Environment – Texas Labor Code Chapter 21.

2. This Court also has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

1

Plaintiff's Second Amended Complaint

3. Venue is proper in this district under 28 U.S.C. § 1391 because the events giving rise to this claim occurred in Dallas County, Texas, and Defendant conducts business in this district.

## II. PARTIES

4. Plaintiff, **Stephanie Bates,** is a resident of Texas and was employed by Defendant in Dallas County, Texas.

5. Defendant, **Caliber Holdings LLC,** is a Texas-based employer subject to the laws cited herein and has appeared in this action through counsel.

## III. FACTUAL BACKGROUND (Please see attached Document Containing the Timeline of Events pages 6-13)

6. Plaintiff was employed by Defendant from approximately 10/25/2021 to current in the position of Accounts Receivable Specialist.

7. During her employment, Plaintiff engaged in protected activity by reporting discriminatory practices and requesting reasonable accommodation.

8. Plaintiff was subjected to adverse employment actions including [e.g., demotion, termination, reduction in hours], harassment, and a hostile work environment.

9. Defendant's conduct was based on Plaintiff's protected characteristics, including her disability, gender, and genetic information.

10. Plaintiff timely filed a charge of discrimination with the EEOC and received a Notice of Right to Sue.

## IV. CAUSES OF ACTION

Count One – Violation of Title VII, 42 U.S.C. § 2000e et seq.

(Section 704(a) Retaliation)

11. Plaintiff incorporates paragraphs 1–10 as if fully set forth herein.

12. Defendant retaliated against Plaintiff for opposing unlawful employment practices and participating in protected activity, in violation of Section 704(a) of Title VII.

2

Plaintiff's Second Amended Complaint

13. Plaintiff suffered damages including lost wages, emotional distress, and reputational harm.

## Count Two – Violation of the Americans with Disabilities Act (ADA)

14. Defendant failed to provide reasonable accommodation and subjected Plaintiff to discrimination based on her disability.

15. Defendant's conduct violated the ADA, causing Plaintiff to suffer damages.

## Count Three – Violation of the Genetic Information Nondiscrimination Act (GINA)

16. Defendants obtained, used, or acted upon Plaintiff's genetic information in a discriminatory manner.

17. Defendants violated GINA and caused Plaintiff harm.

## Count Four – Violation of the Equal Pay Act (EPA)

18. Plaintiff was paid less than similarly situated male employees for performing substantially equal work.

19. Defendant's conduct violated the EPA and caused Plaintiff economic harm.

## Count Five – Harassment and Hostile Work Environment

(Texas Labor Code Chapter 21)

20. Plaintiff was subjected to pervasive and severe harassment based on her protected characteristics.

21. Defendant's conduct created a hostile work environment in violation of Texas Labor Code Chapter 21.

## Count Seven – Retaliation

(Texas Labor Code § 21.055)

22. Defendant retaliated against Plaintiff for reporting discrimination and participating in protected activity.

23. Plaintiff suffered damages including mental anguish, emotional and physical distress, lost income, pain and suffering, non-economic damage, and reputational harm.

## V. DAMAGES

24. Plaintiff seeks all relief available under federal and state law, including:

    - Back pay and front pay
    - Compensatory and punitive damages
    - Compensation for medical COBRA or Health continuation expenses not previously deducted
    - Compensation for mental anguish, emotional and physical distress as well as distress to children and family, other emotional harm caused by harassment, retaliation, and discrimination.
    - Lost income and non-economic damages
    - Pain and suffering
    - Pre- and post-judgment interest
    - Any other relief the Court deems just and proper

## VI. JURY DEMAND

25. Plaintiff demands a trial by jury on all issues so triable.

## VII. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendant be cited to appear and answer, and that upon final trial, Plaintiff have judgment against Defendant for all relief requested herein.

Respectfully submitted,


Dated 8/19/2025

/s/ Stephanie Bates
903 Chamberlain St.

4

Plaintiff's Second Amended Complaint

Irving, TX, 75060<br>
214)931-5277<br>
stephb8s@yahoo.com

### Certificate of Service

On 8/19/2025 I filed the foregoing documents with the clerk of the court for the U.S District Court, Northern District of Texas. I hereby certify that I have served the documents on all counsel and/or *pro se* parties of record by manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

**/s/ Stephanie Bates**
Stephanie Bates

Plaintiff's Second Amended Complaint

**Plaintiff's Second Amended Complaint: III. Factual Background Continued for Case No. 3:25-cv-1831-E-BN**

On or around September of 2022 Brittney Puente was brought on to our Accounts Receivable team. My hiring Manager Dawn and my hiring supervisor Sallie Hajek were laid off on or before December of 2022. I was doing Dealer Accounts Receivables at this time. In June 2023 while on a team outing Brittney Puente pulled me to the side and told me they would like to move me to Rental Accounts and that I would be receiving an increase due to this move. On or around July 1, 2023, I was moved to Rental Accounts Receivables and Kristen Forson, who was previously handling those accounts, was moved to the Supervisor of Accounts Receivables. Kristen Forson trained me during this time from July 2023 to August 2023. I did not receive the increase I was promised during this time. In September 2023 while doing my annual review with Manager Brittney Puente I asked about the pay increase I was promised and was told due to me getting my annual increase at this time she couldn't give me both my annual increase and my yearly increase and this would be revisited at the beginning of the year January 2024. I never received my increase upon taking the Rental Accounts in Accounts Receivables instead things went a different way. I started being reprimanded and told I was doing things incorrectly.

On 3/18/2024 I was sent an email from my Supervisor, Kristen Forson, asking me if I have an update on my notes for the Rental Accounts Receivable. She stated that I had not been updating my notes properly in the Rental Accounts Receivable spreadsheeting Excel. Her response to me after asking her if I am putting notes in the correct location on the Rental Accounts Receivable spreadsheet was that I was in fact adding my notes to the correct spreadsheet. I had previously had a phone conversation with Kristen via Teams telling her that for some reason my notes were being deleted and how could I keep this from happening. Her response to me was, "I don't know what to tell you".

On 4/9/2024 I had a power outage which I let my Supervisor Kristen Forson know via Teams around 1:15pm. Her response to me was that I have power outages often which was not true, but it does happen when the weather is bad as stated in our Teams conversation. I found it odd that she would make such a comment. Again, this day, she stated that she could not locate my notes on the Rental Accounts Receivable Spreadsheet. That the spreadsheet had not been updated since 3/12/2024. Once the power was restored around 4:00pm Kristen asked me to update my notes in the spreadsheet. I asked if I could give her a call because I didn't understand what she was talking about as I had been updating my notes like I was asked to do. In this call I then again told her it seems as though my notes are being deleted from this spreadsheet. After logging in once power was restored, my computer was having issues with logging in and accessing files I needed to perform my job. I let Kristen know this was happening and was advised to call IT. IT was out for the day and I had to call in the morning of 4/10/2024.

On 4/10/2024, after speaking to IT I was able to access my emails a different way via Edge. I noticed that I had received an email on 4/9/2024 from my Manager, Brittney Puente, while my power was out advising me that I needed to start coming into the office on 4/15/2024 until further notice due to notes not being updated on the Accounts Receivable Spreadsheet. I advised Brittney in my email response back to her on 4/10/2024 including screenshots from my Teams conversation with Kristen I explained to Brittney that I was in fact updating my notes as asked and that me and Kristen had a conversation via Teams Phone the previous day 4/9/2024 regarding

6

her instructions been unclear. In my email response back to my Manager, Brittney, I also included that I had been working closely with my Supervisor, Kristen Forson, regarding these large accounts and that I had reported to Kristen all issues I was having with Enterprise Accounts and them not responding to my emails or sending in payments in a timely manner. I also explained to Brittney that one of the reasons I took this job at Caliber Auto Glass was because I was told by my previous Manager, Dawn, and Supervisor, Sallie, it was a work from home position and that I had a son with special needs and working from home allowed me to be close to his school in case of an emergency.

On 4/11/2024 because I was told by IT that they would not have a replacement computer for me that it was being sent into the office for me to pick up, I was advised by my Supervisor, Kristen Forson, that I need to come into the office on 4/12/2024 and use a computer there in the office.

Once in the office on 4/12/2024 I was having trouble logging onto the office computer. I messaged my Manager, Brittney Puente, advising her I couldn't log in and access the things I needed to perform my job duties. Brittney advised me she was on her way to help me, and it would take her an hour to get to the office. Once in the office, she sat beside me while I did the work I needed to do. While she was beside me answering emails on her computer, she was saying things like "you're retarded, that's retarded, this is retarded" while knowing I have a son with special needs as stated the day before 4/11/2024 in a team's call as well as in my email response to her on 4/10/2024.

On 4/15/2024 I reported into the office as I was asked to do. My Supervisor, Kristen Forson, came into the office to retrain me or help me understand how she would like me to add my notes to the Rental Accounts Receivable Spreadsheet. While in the office and adding notes to the spreadsheet with Kristen sitting right beside me the spreadsheet deleted my notes as I had reported to her this was happening.

On 4/17/2024 I received an email from Kristen Forson going over Rental training and notes. She states in this email that I did not take notes. I replied to her email regarding this because I was told by her, I did not need to take notes because she was going to do a training video with me so I would not need to take notes as there would be a video to follow.

On 4/25/2024 I sent an email to my Manager, Brittney Puente regarding the arrangement of being the only employee being made to come into the office. I had corrected what was discussed previously on why I was the only employee being made to come into the office. I received an email reply from Kristen Forson stating there were now other things that needed to be corrected before I could return to the original schedule that I was hired for.

On 4/30/2024 My Supervisor, Kristen Forson, was supposed to come into the office and train me more. I received a message from her via Teams asking if I would like to do another recording for training. I then asked her if she was coming in to train me as she had planned and was told she would not be coming in to train me as she had planned.

5/1/2024 Brittney Puente sent an email to all the Accounts Receivables team employees praising the entire Accounts Receivables team for doing such a good job of collecting money and the year over year over 60 days decreasing by $358K.

7

Plaintiff's Second Amended Complaint: III. Factual Background Continued for Case No. 3:25-cv-1831-E-BN

On 5/10/2024, 5/13/2024, and 5/14/2024 I spoke with Human Resources, Cindy Hutton, advising her of what was going on and how I was being made to come into the office and the way I was being treated by my Manager, Brittney Puente, and Supervisor, Kristen Forson. I advised her another coworker, Brooke, was having the same computer issues as me but she was not made to come into the office like I was. I reported to Cindy the things that were being said by my Manager, Brittney Puente, regarding her sitting beside me saying "this is retarded, that is retarded, you're retarded" and that I had advised my Manager, Brittney Puente, several times that I had a son with disabilities and could not understand why she would say those things knowing I had a son with special needs.

On 5/29/2024 I sent an email to my Manager, Brittney Puente, and Supervisor, Kristen Forson, asking again about returning to my regular work schedule as all issues with my work performance had been resolved. I received a response from Kristen Forson, telling me that when I was hired my work from home status was due to COVID restrictions and not a requirement and that HR had explained that to me recently, which was false. I never had a conversation with HR, Cindy Hutton, telling me my work from home was due to COVID. I was hired in 2021 COVID was not an issue at this time. Upon being hired at Caliber Holdings LLC, I was told by my Manager, Dawn, and Supervisor, Sallie, this was a work from home position and everyone in the department were to work from home. I then responded to Kristen's email on 5/30/2024 explaining to her that the information she was stating regarding work from home was due to COVID was not the correct information that I was hired after COVID 10/25/2021. I also state in this email that I was promised an increase in pay upon taking the Rental AR position on 7/1/2024 that I had yet to receive. I then included, our Director, Carmen Gonzales and Human Resources, Cindy Hutton, on my response as I was being singled out because I had gone to Human Resources, Cindy Hutton, previously due to the way I was being treated by both my Manager, Brittney Puente, and Supervisor, Kristen Forson.

On 5/31/2024, a meeting was held in office with Director, Carmen Gonzales, Human Resources, Cindy Hutton, Manager, Brittney Puente, and Supervisor, Kristen Forson. Where I had stated Brooke McNeil, a coworker in our Accounts Receivable department, was having the same issues I was having with my computer and was not made to come in. I was told we were not to discuss other employees while in this meeting. I brought to everyone in this meeting's attention our team work from home and has been working from home since 2021. I didn't appreciate the way I was being treated by my Manager, Brittney Puente, and Supervisor, Kristen Forson, since I had previously gone to Human Resources, Cindy Hutton, regarding the treatment I was receiving since then. I then requested that all training and conversations be recorded as I was being told I was not telling the truth. I received an email from Kristen Forson 6/3/2024 with a meeting recap of 5/31/2024 and another meeting to re-evaluate my work performance was to be scheduled for 6/14/2024.

On 6/14/2024 I received an email of re-evaluation of my work performance where I was allowed to go back to my regular schedule working from home on 6/17/2024.

On 7/11/2024 I received an email from Human Resources, Cindy Hutton, checking in with me on how things were going since I was told I could go back to my original work schedule. I replied to her email stating that since I had filed for FMLA for my son, the communication between me and

Plaintiff's Second Amended Complaint: III. Factual Background Continued for Case No. 3:25-cv-1831-E-BN

my Supervisor, Kristen Forson, continues to have conflict. That I am unfairly singled out on a weekly basis. I advised Cindy Hutton that I had asked Kristen Forson, if maybe I would be a better fit for a different position in the company and was told "we are trying to help you be good at your job." I mentioned in my reply that I take pride in my work ethic and strive to be consistent with my numbers in collecting payments from my Rental Accounts in Accounts Receivables and I am proud of my progress in my position. Cindy Hutton replied to my email asking if I had looked at other positions in the company and that things were constantly changing in the company, and I could be qualified for a different position. I had been looking at other positions posted but had not found one that I met the job requirements for.

On or before 7/31/2024 I received a Teams Call from Supervisor, Kristen Forson, stating I had sent an email to an Enterprise Representative that got to the hire ups at Caliber Auto Glass on 5/22/2024 and 2/22/2024 and the verbiage I used to explain to Rachel Painton, Enterprise Representative, was not taken well. She stated I would be moving to Insurance Accounts Receivables starting 8/1/2024. I replied to Kristen that the verbiage I used with Rachel Painton, Enterprise Representative, was not in a bad way. I was just asking that she let me know when they take credits so I could get it to our Billing Department so it could be taken off their AR Report and I would not continue to ask her for payment when it wasn't necessary. I did not understand why something was being brought to my attention at the end of July 2024 that happened in May 2024 and February 2024. I would like to include that the invoice that was being discussed between Enterprise Rep. Rachael Painton and I in February 2024 and May 2024 was supposed to be a Warranty in which Rachal Painton did not disclose that information to me until May 2024, and the customer should not have been charged for this invoice in the first place. Had the invoice been put in properly by billing this invoice wouldn't have been an issue in the first place.

On 8/1/2024 Supervisor, Kristen Forson, coworker, Katie Mock, and I had a Teams conversation regarding my new position in Insurance AR. On 8/2/2024 Katie Mock began training me for my new position in Insurance Accounts Receivable by Katy Mock. Who was switching roles with me. Katie trained me on 8/2/2024 for 12 minutes and 21 seconds on Insurance Accounts Receivable, which I had never done previously. Katie Mock didn't have time to train me properly as she had meetings set up with our Supervisor Kristen Forson to train her in her new position, which was my old position, for the remainder of that day as well as the remainder of the week.

On 9/10/2024 Supervisor, Kristen Forson, and I had an Insurance Accounts Receivable Check in a Teams call. On this same day 9/10/2024, I sent a Teams message to Kristen regarding the way I was being spoken to by my coworker Tesia Craig, who has the same position I have in Insurance AR. I received and email from Kristen on 9/11/2024 stating that after our check in she went to look at my Insurance AR notes and my notes on the Insurance AR spreadsheet weren't being done, and some invoice notes had not been updated in 3weeks. I replied to her stating that I was adding notes and the conversation we had the day before she stated they needed to be updated every 30days. I advised her when emailing the Insurance companies regarding invoices that were past due, I was receiving a reply stating to check back with them in 14-30days. I had tried giving her a call to discuss this further and get a little more direction, but she had not answered my phone call.

On 11/11/2024 I sent an email to my Supervisor, Kristen Forson, again letting her know I didn't

9

Plaintiff's Second Amended Complaint: III. Factual Background Continued for Case No. 3:25-cv-1831-E-BN

like the way I was being spoken to by Tesia Craig. I had asked Kristen if Tesia was a Team Lead because I could not understand why she was speaking to me the way she was. Kristen replied to my email stating she didn't see a problem with the way Tesia was speaking to me. Previously, I was reprimanded and moved to a different Account (Insurance) in Accounts Receivables due to Kristen stating I was talking to account Representatives in a specific tone while I was in Rental Accounts Receivables. I could not understand why it was ok for Tesia to continuously speak to me this way and not be reprimanded but when I spoke to people "in a specific tone" I was reprimanded.

On 12/2/2024 Supervisor, Kristen Forson, and I had an Insurance Refresh Training for 18 minutes and 30 seconds. While in this meeting I asked Kristen to look at my Insurance Notes to make sure I was doing what was asked of me. She confirmed in this recorded Refresh Training that notes were being entered properly in the Insurance AR spreadsheet.

On 12/17/2024 I received an email from my Supervisor, Kristen Forson, telling me that I need to reach out to the GM and RM to get approval for a write off. She stated that this invoice should be waived and there are notes in the system stating this. Manager, Brittney Puente, then emails me regarding the same invoice stating that nothing needs to be done with this invoice. To get clarification I replied to Brittney asking why Kristen would get on to me stating I need to email the GM and RM for write off approval. Brittney states this should never have been brought to my attention and there is nothing me or Insurance Accounts Receivables needs to correct or do with this invoice as it was already taken care of.

On 12/24/2024 I received a call via Nice from Yesenia Pena, a Service Advisor, asking me if I could take a payment over the phone because Tesia Craig was refusing to take the payment "because it wasn't in her Region" and told Yesenia she needed to reach out to me to have this payment processed. I sent an email to Kristen regarding this because the entire Accounts Receivable Team can take payment regardless of if it belongs to anyone's accounts in Accounts Receivables. Once Yesenia got me on the phone to take this payment the customer had hung up the phone. No payment was made, meaning we missed out on receiving payment on a past due invoice which is reflected in our Accounts Receivable Report still showing the invoice to be past due. I then tried to call the customer back for payment and was able to get the customer on the phone and collect this payment. I receive an email back from Kristen on 12/26/2024 stating that she had told Tesia Craig not to take any payments that were in my Region of Insurance AR. I had not been advised of this and could not understand why my supervisor would allow my coworker to not take payment making the Company miss out on Receiving money that is owed to them.

On 12/30/2024 I received an email from my Supervisor, Kristen Forson, stating payments had been sitting out on CSCS Unclaimed Checks for weeks and that we had discussed this previously and I should be checking the CSCS Unclaimed Checks weekly. I replied to Kristen's email stating she had not shown me CSCS Unclaimed Checks, but she had showed me Unmatched EFT's. I asked her if Unmatched EFTs were the same as CSCS Unmatched Checks. I stated she had gotten very good at telling me what I am doing incorrectly but not showing me how to do my job and train me properly and that I would reach out to my coworker, Erica, to help me complete the tasks she was asking me to do as Kristen had not trained me in Insurance the way she states she has. I added to the email that per our conversation via Teams that same day, which she told me to call IT to have this fixed, I still cannot access the Insurance Accounts Receivable spreadsheet due

Plaintiff's Second Amended Complaint: III. Factual Background Continued for Case No. 3:25-cv-1831-E-BN

to the permissions being changed by Tesia Craig. I had been on the phone with IT all day trying to regain access to our Insurance Accounts Receivable spreadsheet which I had access to the previous week and now I could not access it. Kristen replied to my email stating we had gone over CSCS Unclaimed checks in our recorded 12/2/2024 training refresher and that she had asked me if I knew how to research these, she states that I replied that I did know how to research and find these, and that proper training has been given to me and my excuses are eliminated. I reply to Kristen's email stating that she had only asked me if I knew "how to get there" to the Unclaimed Checks but not given me instruction on how to research and find these payments. What I should be looking for or how I know if and Unclaimed check is mine or not. Is there something specific I am looking for? Are there key words I should be searching for? I state in my email to her that most of the time I come to her for directions that her replies to me are derogatory. I am unsure if I have offended her as this has been going on for a while now and I am unsure of what I have done wrong to deserve the way she has been treating me for months now.

On 1/6/2025 I received a Meeting invite from Kristen at 4:00pm. I attended the meeting. Once I am in the meeting with Kristen, she sends me an email with a Plan of Action. This meeting is recorded. Kristen states she wants to go over my performance and behavior opportunities. During the meeting Kristen states that I have been extensively trained in Insurance Accounts Receivables by her. I reply that that is incorrect information and that I was trained for 30 minutes by Katie Mock which was incorrect on my part. I was trained by Katie Mock on 8/2/2024 for 12 minutes and 21 seconds and again with Kristen on 12/2/2024 for an Insurance Refresher for 18min and 6 seconds where at the beginning of this training she is yawning and telling me about her personal life. In total I had been trained for Insurance AR for a total of 30 minutes and 27 seconds. In this recorded meeting on 1/6/2025 Kristen first states I have been trained extensively, and I correct her stating I had not been trained in Insurance Accounts extensively, but she did train me in Rental Accounts extensively and when I got good at Rental Accounts, she moved me to Insurance Accounts. I bring up the meeting we had on 5/31/2024 whereas if what she is saying is true it would be recorded as per the meeting on 5/31/2024 where it is stated all meetings and training courses be recorded. She stated that the other girls in Insurance Accounts Receivables have a background in Insurance Accounts where I have not, and this is my first time being in this Insurance position and I do not know as much as Tesia and Erica and that a total of 30minutes to be trained in a new position is not enough for me to know my entire job. Where in Rental accounts she personally took 8 hours and 30 minutes to train me. Towards the end of this meeting Kristen stated that I did not need to be trained in Insurance that is something that I should know as it is Accounts Receivables whereas before she states that I have been extensively trained. I also stated in this recorded Teams call that every time Kristen has brought something to my attention that needs to be corrected, I have made it a point to correct everything she has brought to me so I am not reprimanded for that same problem. I ask her if she's ever had to get on to me again for something she has already brought to my attention for correction. Her answer was "No." Proving my point of every time I was reprimanded I corrected the mistake and that same mistake was never brought to my attention again that my Supervisor Kristen Forson was continuously looking for other things to get onto me about which is harassment and retaliation for me going to HR and making a formal complaint four times or more regarding the way I was being treated in the Accounts Receivables Department. The Plan of Action I received on 1/6/2025 states that there is immediate need for improvement for my behavior because she didn't like me correcting her in emails on what happened when there are emails to prove it but other employees were allowed to scream at me over a Teams Call but my behavior was the problem not other teams mates, or this

Plaintiff's Second Amended Complaint: III. Factual Background Continued for Case No. 3:25-cv-1831-E-BN

is grounds for termination. After we hang up from the recorded meeting I share it with Human Resources, Cindy Hutton, asking if we can discuss what just happened. I did not receive a response from Cindy. I reach out again on 1/7/2025 asking if we can discuss the Plan of Action, I received 1/6/2025 and I still did not receive a reply from her. Both Caliber Holdings and I have a copy of this recorded meeting.

On 1/9/2025 I went out on Short Term Disability.

On 1/29/2025 I try to go back to work. I started my computer and do not have access to anything. I take the steps the computer tells me to take. I call IT. IT tells me I need to contact the HR hotline. I then called the HR hotline where I am told someone would give me a call back this day. Around 4:30pm I still have not received a call from HR to give me access to come back to work. I emailed Kristen from my personal email address and included my phone number thinking maybe she would reach out and give me a call as emails have not been the best point of contact. She emails me back on 1/30/2025 asking me why I am just now emailing her with problems and that I should have contacted her. I tell Kristen I do not have her contact information to let her know what is going on, this is the only way I can contact you.

On 1/30/2025 I resume my Short-Term Disability.

On 3/21/25 I sent an email to HR Representatives Cindy Hutton and Jodie Dibble and Supervisor Kristen Forson advising them of my doctor being out sick and I would have to wait until 4/1/2025 for my doctor to determine whether I would be able to resume working.

On 4/4/2025 I sent an email to HR Representatives Cindy Hutton and Jodie Dibble and Supervisor Kristen Forson advising them that my Short- Term Disability had been extended and if they had any questions to please contact Alight, the FMLA and Short-Term Disability company Caliber Holdings LLC has hired to take care of these cases.

On 4/8/2025 I received a phone call from Lisa, who is Caliber Holdings LLC Alight representative (469)948-9580, stating that Caliber Holdings LLC had told her they had not heard from me. I advised her that I have emailed HR Representative Cindy Hutton and Supervisor Kristen Forson advising them my short-term disability was extended and that I had spoken to Alight, the company Caliber Holdings LLC hired to take care of FMLA and short term disability cases, and they were still determining my short term disability approval and if she had any questions she needed to reach out to Alight, as they have all the information that they have requested from me. After getting off the phone with Lisa Caliber Holdings LLC Alight Rep. I called Alight to advise them Caliber Holdings LLC was calling me and saying they had not heard from me. I was advised by Alight that they had been sending the emails they were supposed to be sending to Caliber Holdings LLC and that if Caliber Holdings LLC has any questions, they should be reaching out to Alight not me for information.

On 4/28/2025 I sent an email to HR Representative Cindy Hutton and Legal Representative Amanda Standford asking if they would like to address the issues at hand regarding discrimination. No response was received.

On 5/12/2025 I sent an email to HR Representatives Jodie Dibble and Cindy Hutton asking if

12

Plaintiff's Second Amended Complaint: III. Factual Background Continued for Case No. 3:25-cv-1831-E-BN

there was a form they required from a doctor for accommodation in the workplace and if they needed a note from my doctor to return to work or is the information given to Alight (the short-term disability company Caliber Holdings LLC uses) enough information for Caliber Holdings LLC. I did not receive a response from this email either and have not heard anything from Caliber Holdings LLC since my email from 4/4/2025.

Beginning on or around April 9, 2024, I began experiencing depression and debilitating anxiety, which subsequently contributed to elevated blood pressure and other physical health concerns. These symptoms arose as a direct result of the mental and physical distress caused by ongoing retaliation and discrimination in the workplace, specifically by my Supervisor, Kristin Forson, and Manager, Brittney Puente. In response to the severity of my condition, I obtained a registered emotional support animal on October 4, 2024, as part of my therapeutic support plan. On December 17, 2024, I consulted with a licensed psychiatrist who diagnosed me with previously undiagnosed ADHD, along with severe anxiety and depression. Following this diagnosis, I initiated regular sessions with a licensed therapist to address the persistent psychological and physiological distress stemming from the treatment I received at work. The impact of this workplace's conduct has extended beyond my own health, causing emotional strain on my children and family.

I believe that I was retaliated against in violation of Section 704(a) of the Civil Rights Act of 1964, as amended, ADA, GINA, ADEA, PWFA, EPA, Harassment and Hostile Work Environment– Texas Labor Code Chapter 21, Retaliation – Texas Labor Code 21.055

### Certificate of Service

On 8/19/2025 I filed the foregoing documents with the clerk of the court for the U.S District Court, Northern District of Texas. I hereby certify that I have served the documents on all counsel and/or *pro se* parties of record by manner authorized by Federal Rules of Civil Procedure 5 (b)(2).

/s/ Stephanie Bates
Stephanie Bates