IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHANIE BATES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-cv-1831-BN |
| | § | |
| CALIBER HOLDINGS LLC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

After the parties consented in writing, this case was ordered transferred to the undersigned United States magistrate judge to conduct all further proceedings, including entry of judgment, under 28 U.S.C. § 636(c). *See* Dkt. No. 58.

The following motions are pending before the Court:

- Plaintiff Stephanie Bates's Motion for Leave to File Out of Time and to Amend Declaration of Emotional Harm [Dkt. No. 36];

- Defendant Caliber Holdings LLC's Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) [Dkt. No. 42];

- Bates's Cross-Motion for Judgment on the Pleadings Pursuant to Rule 12(c) [Dkt. No. 46]; and

- Bates's Motion for Leave to File Amended Response to Defendant's Motion for Judgment on the Pleadings [Dkt. No. 51].

The Court now enters this Memorandum Opinion and Order on the motions.

### Background

Prior orders have documented the background of this case. *See, e.g.*, Dkt. No. 31. The information that follows is repeated here for reference and supplemented

with information relevant to the issues now presented before the Court.

Bates, proceeding *pro se*, initiated this lawsuit against Caliber in the 160th District Court of Dallas County, Texas, Cause No. DC-25-08750, on June 6, 2025. After answering Bates's First Amended Original Petition (filed June 10, 2025) in the state court action, Caliber removed the action, *see* Dkt. No. 1, and provided notice to the state court on July 11, 2025, *see* Dkt. No. 13.

Bates asserted claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Genetic Information Nondiscrimination Act ("GINA"), and the Equal Pay Act ("EPA"). *See* Dkt. No. 1-4 at 30; Dkt. No. 28 at 15.

On September 4, 2025, Bates filed a Motion for Leave to File Second Amended Complaint. *See* Dkt. No. 21. The Second Amended Complaint included the claims from the First Amended Petition and added claims for retaliation and hostile work environment under Chapter 21 of the Texas Labor Code. *See* Dkt. No. 17 at 2-3; Dkt. No. 28 at 18. The complaint also referenced claims under the Age Discrimination in Employment Act ("ADEA") and the Pregnant Workers Fairness Act ("PWFA"). And it added new factual allegations. *See* Dkt. No. 17 at 12-13; Dkt. No. 28 at 29-30.

On October 27, 2025, before the Court ruled on the motion, Bates filed a Motion for Leave to File Third Amended Complaint. *See* Dkt. No. 29.

On the same day, Caliber filed a Motion for Leave to File First Amended Answer to Plaintiff's Amended Petition. *See* Dkt. No. 30. The proposed Amended Answer responded to Bates's First Amended Petition [Dkt. No. 1-4], the live pleading

at that time.

Bates's proposed Third Amended Complaint maintained the same facts and claims as her proposed Second Amended Complaint. *Compare* Dkt. No. 17 *and* Dkt. No. 29 at 4-16. It added only new factual allegations. *See* Dkt. No. 29 at 9-16.

On November 12, 2025, before the Court ruled on the pending motions, Bates filed a Motion for Leave to File out of Time and to Amend Declaration of Emotional Harm. *See* Dkt. No. 36.

On December 1, 2025, the Court granted in part Bates's Motion for Leave to File Third Amended Complaint, *see* Dkt. No. 39, and the Third Amended Complaint was entered as the live complaint, *see* Dkt. No. 40. But the Court found that the new claims under Chapter 21, the ADEA, and the PWFA were futile and treated them as dismissed, leaving only the claims under Title VII, the ADA, the GINA, and the EPA. *See* Dkt. Nos. 38 & 39.

Caliber answered the Third Amended Complaint, *see* Dkt. No. 41, and, on January 21, 2026, filed a Motion for Judgment on the Pleadings under Rule 12(c), *see* Dkt. No. 42.

On February 20, 2026, Bates responded to the motion, *see* Dkt. No. 47, and filed a Cross-Motion for Judgment on the Pleadings Pursuant to Rule 12(c), *see* Dkt. No. 46. Caliber replied in support of its 12(c) Motion on March 9, 2026. *See* Dkt. No. 50.

On March 24, 2026, Bates filed a Motion for Leave to File Amended Response to Defendant's Motion for Judgment on the Pleadings. *See* Dkt. No. 51.

Caliber then responded to Bates's Cross-Motion, *see* Dkt. No. 52, and to her Motion for Leave to File Amended Response, *see* Dkt. No. 55. Bates did not reply in support of either motion.

## Legal Standards

### I.    Rule 6(b)(1) Motion for Leave to Amend Response

Rule 6(b)(1)(B) requires a showing of "excusable neglect" to extend an expired deadline.

And the determination as to excusable neglect

> is at bottom an equitable one, taking account all of the relevant circumstances surrounding the party's omission. These include the danger of prejudice, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Stotter v. Univ. of Tex. at San Antonio*, 508 F.3d 812, 820 (5th Cir. 2007) (cleaned up; quoting *Midwest Employers Cas. Co. v. Williams*, 161 F.3d 877, 879 (5th Cir. 1998) (quoting, in turn, *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993))).

"Excusable neglect is intended and has proven to be quite elastic in its application." *Mattress Giant Corp. v. Motor Adver. & Design Inc.*, No. 3:07-cv-1728-D, 2008 WL 898772, at *2 (N.D. Tex. Mar. 31, 2008) (citation omitted).

But "[i]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *N.L.R.B. v. Tri-Cnty. Elec. Coop., Inc.*, No. 21-60887, 2023 WL 5040960, at *2 (5th Cir. Aug. 8, 2023) (per curiam) (quoting *Pioneer*, 507 U.S. at 392); see also *L.A. Pub. Ins. Adjusters, Inc. v. Nelson*, 17 F.4th

521, 525 (5th Cir. 2021) ("Our court has held that, in most cases, an attorney's simple misunderstanding of the Federal Rules 'weighs heavily against a finding of excusable neglect.'" (quoting *Williams*, 161 F.3d at 880)).

And, although the decision to grant relief under Rule 6(b)(1)(B) turns on the equities, where (1) such a motion is grounded solely on counsel's inadvertence, a reason solely within the control of the movant, see *Nelson*, 17 F.4th at 525 ("[I]n determining whether a party's failure to meet a deadline was excusable, the proper focus is upon whether the neglect of the party and their counsel was excusable." (cleaned up)), and (2) the length of the delay is multiple months, not a few days or even a week or two, the Court cannot find that the neglect is legally excusable, *see Williams v. Santander Consumer USA Holdings Inc.*, No. 3:21-cv-3176-D-BH, 2022 WL 3081765, at *3 (N.D. Tex. Aug. 2, 2022).

## II.     Rule 12(c) Motion for Judgment on the Pleadings

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Robinson v. Midland Cnty., Tex.*, 80 F.4th 704, 709 (5th Cir. 2023) (quoting *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)).

In deciding a motion to dismiss for failure to state a claim on which relief may be granted under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007).

Such a motion is therefore "not meant to resolve disputed facts or test the

merits of a lawsuit" and "instead must show that, even in the plaintiff's best-case scenario, the complaint does not state a plausible case for relief." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

Even so, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level," *id.* at 555.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

So, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up; quoting *Twombly*, 550 U.S. at 557); *see also Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) ("A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" (quoting *Iqbal*, 556 U.S. at 679)); *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("Where the well-pleaded facts of a complaint do not permit a court to infer more than the mere possibility of misconduct, the complaint has alleged

– but it has not 'show[n]' – 'that the pleader is entitled to relief.'" (quoting *Iqbal*, 556 U.S. at 678 (quoting, in turn, FED. R. CIV. P. 8(a)(2)))).

As these cases reflect, Federal Rule of Civil Procedure 8(a)(2) does not mandate detailed factual allegations, but it does require that a plaintiff allege more than labels and conclusions. And, while a court must accept a plaintiff's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Consequently, a threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*; *Armstrong v. Ashley*, 60 F.4th 262, 269 (5th Cir. 2023) ("[T]he court does not 'presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement.'" (quoting *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1162-63 (5th Cir. 2021))).

In sum, "to survive a motion to dismiss" under *Twombly* and *Iqbal*, plaintiffs must "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)); *see also Inclusive Communities*, 920 F.3d at 899 ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citation omitted)).

"*Pro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient.'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff' and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

And a plaintiff may not amend his allegations through a response to a motion to dismiss. "[A] claim for relief" must be made through a pleading, FED. R. CIV. P. 8(a), and a response to a motion is not among the "pleadings [that] are allowed" under the Federal Rules of Civil Procedure, FED. R. CIV. P. 7(a); *see, e.g.*, *Klaizner v. Countrywide Fin.*, No. 2:14-cv-1543 JCM (PAL), 2015 WL 627927, at *10 (D. Nev. Feb. 12, 2015) ("All claims for relief must be contained in a pleading. A response to a motion is not a pleading and it is improper for the court to consider causes of action not contained in the pleadings." (citations omitted)).

That said, Federal Rule of Civil Procedure 15 requires that leave to amend be

granted freely "when justice so requires." FED. R. CIV. P. 15(a)(2). And, because this rule provides a "strong presumption in favor of granting leave to amend," *Fin. Acquisition Partners, LP v. Blackwell*, 440 F.3d 278, 291 (5th Cir. 2006), the Court must do so "unless there is a substantial reason to deny leave to amend," *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. Nov. 1981).

One reason is futility: "If the complaint, as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." *Martinez v. Nueces Cnty., Tex.*, 71 F.4th 385, 391 (5th Cir. 2023) (quoting *Ariyan, Inc. v. Sewage & Water Bd. of New Orleans*, 29 F.4th 226, 229 (5th Cir. 2022)).

## Analysis

### I.    Bates's Motion to Amend Response

The Court first addresses Bates's Motion to File Amended Response. *See* Dkt. No. 51.

After Caliber filed its 12(c) Motion, *see* Dkt. No. 42, the Court ordered Bates to respond no later than February 20, 2026, *see* Dkt. No. 44. Bates filed her original response on February 20, 2026. *See* Dkt. No. 47. Caliber replied on March 9, 2026. *See* Dkt. No. 50.

Bates's Motion to File Amended Response was filed on March 24, 2026 – over four weeks after the deadline – and is untimely. *See* Dkt. No. 51.

And, so, the Court will not permit Bates to file an amended response unless she shows good cause or excusable neglect under Rule 6(b)(1).

Bates's motion provides no facts to meet this standard. Bates merely states that her proposed "amendment is submitted in good faith, without undue delay, and will not prejudice Defendant." Dkt. No. 51 at 2. She also states that "any delay is excusable and minimal." *Id.*

The Court cannot determine, from these conclusory contentions, why Bates did not timely move to amend her response, let alone whether those reasons were excusable.

And, so, the Court denies the Motion to File Amended Response [Dkt. No. 51] and will consider only Bates's original response [Dkt. No. 47].

## II. Caliber's Motion for Judgment on the Pleadings

The Court now turns to Caliber's Motion for Judgment on the Pleadings. *See* Dkt. No. 42. Caliber moves for judgment on each of Bates's claims. *See id.*

### A. Title VII Retaliation Claim

When a court applies Rule 12(b)(6)'s standards to a Title VII claim, the complaint "need not contain specific facts establishing a prima facie case of discrimination [or retaliation] under the framework set forth … in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 322, 336 (5th Cir. 2023) (cleaned up); *accord Hamilton v. Dall. Cnty.*, 79 F.4th 494, 502 n.45 (5th Cir. 2023) (en banc).

"But a plaintiff is still required to plead sufficient facts *on all of the ultimate elements* of [each] claim." *Norsworthy*, 70 F.4th at 336 (cleaned up; emphasis in original). The "ultimate elements" of a retaliation claim are "1) [the plaintiff] engaged

in protected activity, 2) she suffered an adverse employment action, and 3) a causal link exists between the protected activity and the adverse employment action." *Wright v. Union Pac. R.R. Co.*, 990 F.3d 428, 433 (5th Cir. 2021) (cleaned up).

A protected activity under Title VII includes (1) opposition to any practice rendered unlawful by Title VII and (2) participation in an investigation, proceeding, or hearing under Title VII or making a charge, testifying, or assisting in such activity. *See Davis v. Dall. Indep. Sch. Dist.*, 448 F. App'x 485, 492 (5th Cir. 2011).

Internal complaints regarding perceived discrimination may constitute a protected activity for purposes of alleging a retaliation claim. *See Rodriguez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 328 (5th Cir. 2013) (per curiam) ("An employee that files an internal complaint of discrimination engages in a protected activity." (citing *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 194 (5th Cir. 2001))); *see also Walker v. Univ. of Tex. Med. Branch – Galveston*, No. 3:17-cv-313, 2018 WL 3850827, at *4 (S.D. Tex. July 3, 2018) (noting that courts in this circuit "uniformly hold that an informal complaint must reference a discriminatory practice to constitute a protected activity" (citations omitted)), *rec. adopted*, 2018 WL 3844691 (S.D. Tex. Aug. 13, 2018); *cf. Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th Cir. 2010) (per curiam) ("Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue." (collecting cases)).

But "a vague complaint, without any reference to an unlawful employment practice under [the statute], does not constitute protected activity." *Davis*, 448 F.

App'x at 493 (collecting cases); see also *EEOC v. Omni Hotels Mgmt. Corp.*, 516 F. Supp. 2d 678, 705-06 (N.D. Tex. 2007) ("Vague concerns and even vague assertions of discrimination are not sufficient to constitute an opposition to an unlawful employment practice." (collecting cases)).

> In her Third Amended Complaint, Bates alleges the following:
>
> On 5/10/2024, 5/13/2024, and 5/14/2024 I spoke with Human Resources [("HR")], Cindy Hutton, advising her of what was going on and how I was being made to come into the office and the way I was being treated by my Manager, Brittney Puente, and Supervisor, Kristen Forson. I advised her another coworker, Brooke, was having the same computer issues as me but she was not made to come into the office like I was. I reported to Cindy the things that were being said by my Manager, Brittney Puente, regarding her sitting beside me saying "this is retarded, that is retarded, you're retarded" and that I had advised my Manager, Brittney Puente, several times that I had a son with disabilities and could not understand why she would say those things knowing I had a son with special needs.

Dkt. No. 40 at 8. She adds that she "was being singled out because [she] had gone to [human resources] previously due to the way she was being treated by" Puente and Forson. *Id.*

Bates further alleges that, on May 29, 2024, she made similar reports to Hutton and Caliber's Director, Carmen Gonzales, via email about "being singled out." *See id.* And, on May 31, 2024, she had another meeting with Hutton, Puente, Forson, and Gonzales, during which she made similar complaints about "the way [she] was being treated." *See id.* at 9.

A complaint to human resources can be a protected activity for the purposes of a retaliation claim. But disability is not a protected class under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1) (prohibiting discrimination on the basis of "race, color, religion,

sex, or national origin").

And Bates does not allege that she complained about discrimination based on any other characteristics.

And, so, Bates's internal complaints to human resources, as alleged, are not protected activities because they did not "reference … an unlawful employment practice under" Title VII. *Davis*, 448 F. App'x at 493.

Bates also alleges that she emailed Hutton on July 11, 2024 and informed her "that since [she] had filed for [Family Medical Leave Act ('FMLA')] for [her] son, the communication between [her] and [Forson] continue[d] to have conflict" and that she was "unfairly singled out on a weekly basis." Dkt. No. 40 at 9.

But she does not allege that she requested FMLA leave in relation to a protected trait under Title VII – "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

And, so, her FMLA request also fails to amount to a protected activity under Title VII.

Filing a charge with the Equal Employment Opportunity Commission ("EEOC") can be a protected activity under Title VII. *See Davis*, 448 F. App'x at 492. And Bates filed an EEOC charge alleging Title VII retaliation. *See* Dkt. No. 1-4 at 43-58. But nowhere in her Third Amended Complaint does she allege or raise an inference that Caliber took action against her because she filed the charge. *See* Dkt. No. 40.

And, so, Bates has failed to allege a claim of Title VII retaliation.

### B. FMLA Retaliation Claim

Bates does not explicitly state that she is bringing a claim under the FMLA. But she does allege that she requested FMLA leave. *See* Dkt. No. 40 at 9.

And Bates need not provide a legal theory for the claims she alleges. *See Johnson*, 574 U.S. at 12 ("Having informed [a defendant] of the factual basis for their complaint, [a plaintiff is] required to do no more to stave off threshold dismissal for want of an adequate statement of their claim," so a plaintiff need not "set out a legal theory for the plaintiff's claim for relief." (cleaned up)).

So, although Bates cited Title VII for her retaliation claim, the Court will not dismiss a claim to the extent that the facts alleged do not support liability under Title VII but better fit another statute, such as the FMLA.

And the Court will analyze Bates's retaliation claim under the FMLA framework.

To establish a prima facie case of FMLA retaliation, an employee must demonstrate that (1) she was protected under the FMLA; (2) she suffered an adverse employment action; and (3) there is a causal link between protected activity under the FMLA and the adverse action. *See Wheat v. Fl. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).

Requesting leave is a protected activity under the FMLA. *See Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 766 (5th Cir. 2016).

As to adverse employment action,

[f]or purposes of [statutory] anti-retaliation provision[s], the Supreme Court has held that an adverse employment action is defined slightly

more broadly than the term is defined in the employment discrimination context. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006). Specifically, a plaintiff seeking to establish a retaliatory adverse employment action "must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (cleaned up).

[Applicable] anti-retaliation provisions do not protect employees from petty slights, minor annoyances, and simple lack of good manners." *Id.* However, retaliatory adverse employment actions need not rise to the level of ultimately employment decisions. *Id.*; *Donaldson v. CDB Inc.*, 335 F. App'x 494, 506 (5th Cir. 2009). [And], when determining whether an allegedly retaliatory action is materially adverse, courts "look to indicia such as whether the action affected 'job title, grade, hours, salary, or benefits' or caused 'a diminution in prestige or change in standing among … coworkers.'" *Paul v. Elayn Hunt Corr. Ctr.*, 666 F. App'x 342, 346 (5th Cir. 2016) (quoting *Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009)).

*Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 826-27 (5th Cir. 2019) (citation modified).

Having reviewed Bates's statement of facts, the Court finds that most of Bates's allegations – such as "conflict," being "singled out," not being trained for long enough, being "spoken to" in a certain way, and not being allowed to work from home – do not rise to the level of adverse employment actions. Dkt. No. 40 at 8-10; *accord King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("[A]llegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation.").

Nor does her allegation that she was transferred to the Insurance Accounts Receivable department at Caliber amount to an adverse employment action, as Bates does not suggest that this change caused a "diminution in prestige or change in

standing among [her] coworkers." *Stewart*, 586 F.3d at 332.

But Bates also alleges that (1) she had a Performance Improvement Plan ("PIP") meeting on November 23, 2026; (2) she lost access to Caliber's systems in January of 2025 after taking short-term leave; and (3) she "has yet to hear back from Caliber regarding [her] return-to-work status." Dkt. No. 40 at 6, 11 & 12.

Each of these allegations supports an inference that she was subject to an adverse employment action. *See Lemonia v. Westlake Mgmt. Servs., Inc.*, No. 22-30630 2023 WL 6878915, at *7 (5th Cir. Oct. 18, 2023) ("We have held that a PIP can support a retaliation claim."); *Mauder v. Metro. Transit Auth. Harris Cnty., Tex.*, 446 F.3d 574, 583 (recognizing that termination or "deprivation of a substantive right to reinstatement" can form the basis of a FMLA claim).

To show a causal link between the protected activity and the adverse action, a plaintiff "does not have to show that the protected activity is the only cause of [his] termination," but he must "show that the protected activity and the adverse employment action are not completely unrelated." *Mauder*, 446 F.3d at 583. As with other types of retaliation claims, a "very close" temporal proximity alone can establish a causal link for a prima facie FMLA retaliation case. *Besser v. Tex. Gen. Land Off.*, 834 F. App'x 876, 884 (5th Cir. 2020) (citing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001); *accord Wright*, 990 F.3d at 434 (finding a one-month lapse between the protected activity and adverse action sufficient for causal connection); *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (finding a two-month lapse between the protected activity and adverse action sufficient).

As to the PIP, Bates does not allege that it bore any relation to her request for FMLA leave. And, so, Bates fails to allege a causal link between this potential adverse employment action and her protected activity.

But Bates alleges that she went on disability leave on January 9, 2025 and lost access to Caliber's systems when she tried to return to work 20 days later on January 29, 2025. *See* Dkt. No. 40 at 12 & 25.

Construing Bates's allegations liberally, the Court finds that Bates has alleged a causal connection between her request for FMLA leave and her losing access to Caliber's systems.

And, so, the Court will not dismiss Bates's retaliation claim, insofar as it is raised under the FMLA.

### C. ADA and GINA Claims

In her Third Amended Complaint, Bates alleges that Caliber "failed to provide reasonable accommodation and subjected [her] to discrimination based on her disability" in violation of the ADA. Dkt. No. 40 at 3. And she alleges that Caliber "obtained, used, or acted upon [her] genetic information in a discriminatory manner" in violation of the GINA. *Id.*

Caliber asserts that these ADA and GINA claims fail because Bates failed to exhaust her administrative remedies as to those claims. *See* Dkt. No. 43 at 17.

The Court agrees.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376,

378-79 (5th Cir. 2002); *see also Huff v. DRE Mgmt., Inc.*, No. 3:12-cv-414-B, 2012 WL 3072389, at *3 (N.D. Tex. July 30, 2012) ("An employee of a private entity, alleging employment discrimination under the ADA, must first exhaust her administrative remedies before pursuing a lawsuit." (citing 42 U.S.C. § 12117(a); citations omitted)); *Bowie v. Univ. of Md. Med. Sys.*, ELH-14-3216, 2015 WL 1499465, at *5 (D. Md. Mar. 31, 2015) ("GINA expressly incorporates Title VII's exhaustion requirements for employees covered by Title VII." (citing 42 U.S.C. § 2000ff-6(a)(1); cleaned up)).

To exhaust administrative remedies, the plaintiff must "file[ ] a timely charge with the EEOC and receive[ ] a statutory notice of right to sue." *Taylor*, 296 F.3d at 379 (citing *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788-89 (5th Cir. 1996)). One of the exhaustion requirement's "central purposes … is to put employers on notice of 'the existence and nature of the charges against them.'" *Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878 (5th Cir. 2003) (quoting *EEOC v. Shell Oil Co.*, 466 U.S. 54, 77 (1984)).

"In determining whether a plaintiff has exhausted a particular claim, 'the scope of an EEOC complaint should be construed liberally.'" *Jennings v. Towers Watson*, 11 F.4th 335, 342 (5th Cir. 2021) (quoting *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (quoting, in turn, *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006))). The scope of a plaintiff's complaint "is limited to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Thomas v. Tex. Dep't Crim. Just.*, 220 F.3d 389, 395 (5th Cir. 2000) (citing *Young v. City of Hous.*, 906 F.2d 177, 179 (5th Cir. 1990)) (finding that the

district court abused its discretion when it permitted a race discrimination claim under Title VII when the EEOC charge dealt with only gender discrimination).

As a matter of principle, different claims under the ADA (e.g., disparate treatment, retaliation, failure to accommodate) "represent distinct categories of disability discrimination under the ADA." *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir. 2006) (per curiam) ("The EEOC could not reasonably have been expected, when presented with a claim alleging disparate treatment arising on August 29, 2003, to investigate the entirely distinct failure-to-accommodate claim arising from January 2003 through June of 2003."). And, so, to properly exhaust administrative remedies, the plaintiff must provide specific facts that support each claim that would trigger the EEOC to investigate each claim." *See, e.g.*, *Pacheco*, 448 F.3d at 789 ("We engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than its label.").

Although failing to check a box on the EEOC charge is not fatal to a retaliation claim, "[d]iscrimination and retaliation claims are distinct," for example, and a court may find that a plaintiff did not exhaust administrative remedies when "the factual statement in [the plaintiff's] EEOC charge did not put [the defendant] on notice that [the plaintiff] was asserting a retaliation claim." *Frazier v. Sabine River Auth. La.*, 509 F. App'x 370, 374 (5th Cir. 2013) (per curiam). Similarly, merely checking the box for retaliation, for instance, on the EEOC charge is not sufficient if the plaintiff fails to allege any facts concerning retaliation that would have put the EEOC on notice

about the possibility of a retaliation claim. *See Givs v. City of Eunice*, 512 F. Supp. 2d, 522, 536-37 (W.D. La. 2007) (citing *Randel v. U.S. Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998)).

Bates's EEOC charges contain the following allegations:

On or about May 13, 2024, I made a complaint to Cindy Hutton, Human Resources Representative about the way I was being treated in Rental Accounts Receivables. We had a meeting on or about May 31, 2024, with Director Carmen Gonzales, Human Resources Representative Cindy Hutton, Manager Brittney Puente, and Supervisor Kristen Forson because I was made to start coming into the office on or about April 15, 2024, through June 14, 2024, and I was the only employee in our department that was made to start coming into the office. Ever since I made this complaint to Human Resources and how I have been treated she has sought out reasons to discipline me and write me up. On or about August 1, 2024, I was moved from Rental to Insurance. On or about January 6, 2025, in a one-on-one where I was put on a Performance Improvement Plan by my supervisor for immediate improvement or grounds for termination.
        I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.

Dkt. No. 40 at 64-65, 67-68, 73-74.

That Bates mentions only Title VII and not the ADA or the GINA in her EEOC charge is not necessarily fatal to her claim.

But the above allegations make no mention of a disability, nor do they bring attention to any of Bates's genetic information. Bates only summarily references "the way [she] was being treated." *Id.* And, so, an investigation into discrimination based on disability or genetic information could not reasonably be expected to arise out of the above allegations. *See, e.g.*, *Brown v. Metroplex Plumbing*, No. 3:17-cv-2131-L-BN 2017 WL 6466747, at *3 (N.D. Tex. Oct. 5, 2017) (finding that plaintiff failed to exhaust his ADA and GINA claims because his EEOC charge "only indicate[d] a claim

for discrimination based on race"), *rec. adopted*, 2017 WL 6447201 (N.D. Tex. Dec. 18, 2017).

The Court dismisses Bates's ADA and GINA claims without prejudice for failure to exhaust.

### D. EPA Claim

"To establish a prima facia case under the EPA, a plaintiff must show that '(1) her employer is subject to the Act; (2) she performed work in a position requiring equal skill, effort, and responsibility under similar working conditions; and (3) she was paid less than the employee of the opposite sex providing the basis of comparison.'" *Badgerow v. REJ Properties, Inc.*, 974 F.3d 610, 617 (5th Cir. 2020) (quoting *Chance v. Rice Univ.*, 984 F.2d 151, 153 (5th Cir. 1993)).

"Although … the EPA protects both men and women, it only applies when the discrimination at issue is 'on the basis of sex.'" *McGee v. Hiland Dairy Foods Co., LLC*, No. 3:23-cv-2630-D, 2024 WL 3933313, at *2 (N.D. Tex. Aug. 23, 2024) (quoting 29 U.S.C. § 206(d)(1)); *see also Ayorinde v. Team Indus. Servs. Inc.*, MO:23-cv-12-DC, 2024 WL 1190774, at *2 (W.D. Tex. Feb. 19, 2024) ("[T]he elements for an Equal Pay Act claim require[ ] the plaintiff to prove [she was] paid less than the employee of the opposite sex providing the basis of comparison." (cleaned up)).

Bates alleges that she "was paid less than similarly situated male employees for performing substantially equal work." Dkt. No. 40 at 3. But her Third Amended Complaint lacks factual allegations supporting this conclusory allegation. Although Bates alleges that she did not receive the pay increase that she was promised, *see,*

*e.g.*, Dkt. No. 40 at 6 & 8, she "does not plead that [she] was paid less than any [male] employee at [Caliber]," *McGee*, 2024 WL 3933313, at \*2.

And, so, the Court dismisses the EPA claim. And, because Bates has amended her complaint three times, it's likely that she has now alleged her "best case," and, so, the EPA claim is dismissed with prejudice. *See, e.g.*, *Allen v. Navy Fed. Credit Union*, No. 3:24-cv-949-L-BN, 2025 WL 484818, at \*13 (N.D. Tex. Feb. 13, 2025).

### III.    Bates's Cross-Motion for Judgment on the Pleadings

As explained above, when deciding a defendant's motion for judgment on the pleadings, just as a motion to dismiss for failure to state a under Rule 12(b)(6), the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina*, 495 F.3d at 205-06.

But "when the plaintiff moves for judgment on the pleadings, the defendant's 'denials and allegations of the answer which are well pleaded must be taken as true." *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (quoting *Beal v. Mo. Pac. R.R. Corp.*, 312 U.S. 45, 51 (1941)).

And, so, a plaintiff's motion for judgment on the pleadings should only be granted "if there is no issue of material fact and if the pleadings show that the [plaintiff] is entitled to prevail as a matter of law." *Greenberg v. Gen. Mills Fun Grp., Inc.*, 478 F.2d 254, 256 (5th Cir. 1973) (citations omitted).

Bates's cross-motion does not apply this standard. Instead, Bates incorrectly contends that "Rule 12(c) requires the Court to accept [her] allegations as true and

draw all reasonable inferences in her favor." Dkt. No. 46 at 6. And she asks the Court to grant her cross-motion because her "claims [are] sufficiently pled." *Id.*

Nor does Bates's cross-motion point to any absence of a material fact dispute. Indeed, Caliber's Answer to the Third Amended Complaint denies many of Bates's factual allegations that form the bulk of her claims. *See* Dkt. No. 41.

Insofar as Bates asks the Court to strike Caliber's "insufficient" affirmative defenses, she fails to provide any reason why the defenses fail as a matter of law. And she does not specify which affirmative defenses she seeks to challenge.

And, so, Bates has not met her burden to show that she is entitled to judgment under Rule 12(c).

## IV.   <u>Bates's Motion to Amend Declaration of Harm</u>

Bates filed, without leave, a Declaration of Emotional Harm on October 30, 2025. *See* Dkt. No. 32.

On November 12, 2025, she filed her Motion for Leave to File out of Time and to Amend Declaration of Emotional Harm. *See* Dkt. No. 36. In her motion, Bates noted that the original Declaration was filed three days after the October 27, 2025 deadline to amend pleadings and retroactively sought leave to file the Declaration. *See id.* at 1. She further asked the Court for leave to amend the Declaration under Federal Rules of Civil Procedure 6(b)(1)B) and 15(a)(2). *See id.* at 2; *see also* FED. R. CIV. P. 15(a)(2) (dictating procedure for amending pleadings).

Based on the motion, the Court construes Bates's Declaration as an attachment to her complaint. And it construes her motion as seeking leave to amend

her complaint.

On December 1, 2025, the Court granted Bates leave to file her Third Amended Complaint, *see* Dkt. No. 39, which was docketed as the live complaint, *see* Dkt. No. 40. So any motion to amend her complaint that was filed before the Third Amended Complaint – including her Motion for Leave to File out of Time and to Amend Declaration of Emotional Harm [Dkt. No. 36] – is moot and, so, denied.

## Conclusion

The Court GRANTS IN PART AND DENIES IN PART Defendant Caliber Holdings LLC's Motion for Judgment on the Pleadings [Dkt. No. 42]. Plaintiff Stephanie Bates's claims under the Americans with Disabilities Act and Genetic Information Nondiscrimination Act are DISMISSED WITHOUT PREJUDICE for failure to exhaust. Her Title VII retaliation and Equal Pay Act claims are DISMISSED WITH PREJUDICE. But her retaliation claim may proceed under the Family and Medical Leave Act.

The Court DENIES Bates's Motion for Leave to File Out of Time and to Amend Declaration of Emotional Harm [Dkt. No. 36], Cross-Motion for Judgment on the Pleadings Pursuant to Rule 12(c) [Dkt. No. 46], and Motion to File Amended Response [Dkt. No. 51].

SO ORDERED.

DATED: June 3, 2026

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE